FILED IN
COURT OF CRIMINAL APPEALS

August 11, 2015

ABEL ACOSTA, CLERK

WR-82,875-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/10/2015 6:10:58 PM
Accepted 8/11/2015 8:14:12 AM
ABEL ACOSTA
CLERK

NOS. WR-82,875-01 and WR-82,875-02

## IN THE TEXAS COURT OF CRIMINAL APPEALS

RELATING TO CAUSE N0. 10-DCR-054233
268TH DISTRICT COURT, FORT BEND COUNTY, TEXAS

---

**IN RE THE STATE OF TEXAS EX REL. JOHN F. HEALEY, JR.
DISTRICT ATTORNEY, 268TH JUDICIAL DISTRICT**

**VS.**

**HONORABLE BRADY G. ELLIOTT, JUDGE PRESIDING
268TH DISTRICT COURT, FORT BEND, COUNTY**

---

**STATE'S BRIEF ON THE ISSUES
DESIGNATED BY THIS COURT**

---

JOHN F. HEALEY, JR.
District Attorney, 268th Judicial District

Fred M. Felcman
First Assistant District Attorney

Chad Bridges
Lesleigh Morton
Assistant District Attorneys

--Oral Argument Requested--

Gail Kikawa McConnell
Assistant District Attorney
SBOT #11395400
301 Jackson Street, Room 101
Richmond, Texas 77469
(281) 341-4460 / (281) 238-3340 (fax)
Gail.McConnell@fortbendcountytx.gov

Counsel for the Relator, State of Texas

## IDENTITY OF THE JUDGE, PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.1, the parties and the names and addresses of all counsel to Respondent's order for a present competency jury trial are as follows:

The State of Texas                                                    Relator

John F. Healey, Jr.                        District Attorney, 268th Judicial District
Fred M. Felcman                                First Assistant District Attorney
Chad Bridges                                        Assistant District Attorney
Lesleigh Morton                                     Assistant District Attorney
Gail Kikawa McConnell                               Assistant District Attorney
301 Jackson Street, Room 101
Richmond, Texas  77469


Hon. Brady G. Elliott, Presiding Judge                              Respondent
268th District Court
301 Jackson Street
Richmond, Texas  77469


Albert James Turner                                        Real Party in Interest
TDCJ # 00999565


Robert A. Morrow                             Attorney for Real Party in Interest
24 Waterway Ave, Suite 660
The Woodlands, TX  77380


Amy Martin                                   Attorney for Real Party in Interest
202 Travis St, Suite 300
Houston, TX  77002

i

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . x

ISSUES DESIGNATED BY THIS COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . x

    1.      Must a defendant be presently competent in order for a retrospective competency trial to occur?

    2.      If so, does the trial court have the authority to require a jury to determine the issue of present competency?

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

State's Answer to Issue One: No, a person need not be presently competent in order for a retrospective competency trial to occur . . . . . . . . . 7

A.     There is no constitutional right to be competent for a retrospective competency trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    1.     A defendant has no right to be competent to assist counsel at a retrospective competency trial . . . . . . . . . . . . . . . . . . . . . . 8

    2.     A defendant has no right to be competent under the Confrontation Clause for a retrospective competency trial . . . 9

3.      A retrospective competency trial is not about guilt or innocence, and a defendant has no right to the presumption of innocence under the Due Process Clause . . . . . . . . . . . . . . 10

4.      The State has found no reason to provide greater rights under the Texas Constitution . . . . . . . . . . . . . . . . . . . . . . . . . 11

B.      There is no statutory right to be competent at a retrospective competency trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

C.      There is no rational reason to require present competency to stand a retrospective competency trial. . . . . . . . . . . . . . . . . . . . . . . . . . 13

1.      Evidence of a defendant's competency is derived from independent sources . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

2.      A breakdown in the adversarial process occurs if a defendant's recollection of competency is credited . . . . . . . . 14

3.      A present competency trial is duplicitous of the retrospective competency trial . . . . . . . . . . . . . . . . . . . . . . . 15

State's Answer to Issue Two:   This issue is inapplicable because a defendant need not be competent for a retrospective competency trial . . . 18

A.      Because a person need not be competent for a retrospective competency trial, the second issue is inapplicable . . . . . . . . . . . . . . 18

B.      A trial court's jurisdiction on remand is limited to the mandate of this Court, which required the trial court to determine feasibility of a retrospective competency trial . . . . . . . . . . . . . . . . . . . . . . . . . 19

C.      Respondent asserts he has authority under the Texas Constitution to empanel a jury to determine present competency, but no law requires present competency for a retrospective competency trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

D.      Substantial evidence regarding competency, including audio-video recordings of jail visits during the course of the capital murder

trial, are available, and a retrospective competency trial is feasible regardless of Turner's present competency .................... 21

PRAYER ........................................................ 24

CERTIFICATE OF COMPETENT EVIDENCE .......................... 25

CERTIFICATE OF COMPLIANCE ................................... 25

CERTIFICATE OF SERVICE ...................................... 25

APPENDIX M

# INDEX OF AUTHORITIES

**CASES**                                                            **PAGE**

Baker v. State,
297 S.E.2d 9 (Ga. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

Brandon v. State,
599 S.W.2d 567 (Tex. Crim. App. 1979),
*vacated on other grounds* 453 U.S. 902 (1981) . . . . . . . . . . . . . . . . . . 12, 22

Bundy v. Dugger,
816 F.2d 564 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cooper v. Oklahoma,
517 U.S. 348 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Drope v. Missouri,
420 U.S. 162 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Dusky v. United States,
362 U.S. 402 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Dusky v. United States,
271 F.2d 385 (8th Cir. 1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Estelle v. Smith
451 U.S. 454 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Ex parte Mines,
26 S.W.3d 910 (Tex. Crim. App. 2000) . . . . . . . . . . . . . . . . . . . . . . 9, 10-11

Ex parte Watson,
606 S.W.2d 902 (Tex. Crim. App. 1980) . . . . . . . . . . . . . . . . . . . . . . . 6, 19

Greene v. State,
264 S.W.3d 271 (Tex. App.--San Antonio 2008, pet. ref'd) . . . . . . . . . . 1, 8

In re McCann,
422 S.W.3d 701 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 18

Leisure v. State,
828 S.W.2d 872 (Mo. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Medina v. California,
505 U.S. 437 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12, 13

Pate v. Robinson,
383 U.S. 375 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13, 22

People v. Ary,
246 P.3d 322 (Ca. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

People v. Lightsey,
279 P.3d 1072 (Ca. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15, 17

Riggins v. Nevada,
504 U.S. 127 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Ryan v. Gonzales,
133 S.Ct. 696 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

State v. Basile,
942 S.W.2d 342 (Mo. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

State v. Davis,
506 S.E.2d 455 (N.C. 1988), *cert denied* 526 U.S. 1161 (1999) . . . . . . . . 10

State v. Herndon
215 S.W.3d 901 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 20

State v. Holloway,
360 S.W.3d 480 (Tex. Crim. App. 2012), *abrogated on other grounds*
*Whitfield v. State*, 430 S.W.3d 405 (Tex. Crim. App. 2014) . . . . . . . . . . . 19

State v. McRae,
    594 S.E.2d 71 (N.C. Ct. App.),
    *pet. denied* 599 S.E.2d 911 (N.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Tate v. State,
    896 P.2d 1182 (Okla. Crim. App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 12

Turner v. State,
    422 S.W.3d 676 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . . . . . ix, 1, 16

United States v. David,
    511 F.2d 355 (D.C. Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States ex rel. Roth v. Zelker,
    455 F.2d 1105 (2nd Cir.), *cert. denied*, 408 U.S. 927 (1972) . . . . . . . . . . . 13

White v. State,
    591 S.W.2d 851 (Tex. Crim. App. 1979), *overruled on other grounds*
    *Bigby v. State*, 892 S.W.2d 864 (Tex. Crim. App. 1994) . . . . . . . . . . . . 9-10

**UNITED STATES CONSTITUTION**
    Amendment V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11
    Amendment VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

**STATUTES AND RULES**

CODE OF CRIMINAL PROCEDURE
    Article 46.05 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    Article 46B.003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16
    Article 46B.005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    Article 46B.006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    Article 46B.024 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17
    Article 46B.052 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

TEXAS RULES OF APPELLATE PROCEDURE
   Rule 4.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x
   Rule 38.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TEXAS RULES OF CIVIL PROCEDURE
   Rule 233 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**OTHER AUTHORITIES**

Cal. Penal Code Ann. §§ 1369(a), 1370 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Francis C. Amendola, et. al., 22A C.J.S. Criminal Law § 791,
   "Retrospective Hearings" (March 2014) . . . . . . . . . . . . . . . . . . . . . . . . . 22

Brakel, Parry, & Weiner, The Mentally Disabled and the Law . . . . . . . . . . . . . 13

George E. Dix & John M. Schmolesky,
   43 *Texas Practice Series: Criminal Practice and Procedure* § 31:81,
   "Retrospective competency determinations" (3d ed. Westlaw 2014)
   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20, 22

**NOS. WR-82,875-01 and WR-82,875-02**
**IN THE TEXAS COURT OF CRIMINAL APPEALS**

**RELATING TO CAUSE N0. 10-DCR-054233**
**268TH DISTRICT COURT, FORT BEND COUNTY, TEXAS**

---

**IN RE THE STATE OF TEXAS EX REL. JOHN F. HEALEY, JR.**
**DISTRICT ATTORNEY, 268TH JUDICIAL DISTRICT**

**VS.**

**HONORABLE BRADY G. ELLIOTT, JUDGE PRESIDING**
**268TH DISTRICT COURT, FORT BEND, COUNTY**

---

**STATE'S BRIEF ON THE ISSUES**
**DESIGNATED BY THIS COURT**

---

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

**STATEMENT OF THE CASE**

This is a death penalty case on remand to Respondent, Honorable Brady G. Elliott, Judge Presiding, 268th District Court, Fort Bend County, Texas to determine whether a retrospective competency jury trial is feasible, and if so, to hold that trial. *Turner v. State*, 422 S.W.3d 676, 696-97 (Tex. Crim. App. 2013). Respondent set a jury trial on Turner's present competency to determine whether a retrospective competency trial is feasible. Relator seeks a writ of mandamus and/or prohibition to order Respondent to honor this Court's mandate ordering the trial court, not a jury, to

determine feasibility.

This Court granted leave to file Relator's petitions for writs of mandamus and prohibition, designated two issues, and asked for briefing. The parties briefs are due forty-five days from the date of the Court's order granting leave to file or August 8, 2015. Because August 8, 2015, is a Saturday, the briefs are due on Monday, August 10, 2015. Tex. R. App. P. 4.1(a).

## STATEMENT REGARDING ORAL ARGUMENT

Relator requests oral argument. The character of a retrospective competency trial has not been defined by this Court. The character of a retrospective competency will determine whether a defendant must be presently competent for that trial.

## ISSUES DESIGNATED BY THIS COURT

1. Must a defendant be presently competent in order for a retrospective competency trial to occur?

2. If so, does the trial court have the authority to require a jury to determine the issue of present competency?

## STATEMENT OF FACTS

On October 30, 2013, this Court remanded this case, instructing:

> On remand, the trial court shall first determine whether it is presently feasible to conduct a retrospective competency trial, given the passage of time, availability of evidence, and any other pertinent considerations. Should the trial court deem a retrospective competency trial to be feasible, it shall proceed to conduct such a trial in accordance with Chapter 46B, Subchapter C, of the Code of Criminal Procedure. Regardless of whether the trial court deems a retrospective competency trial to be feasible, the record of the proceedings on remand shall then be returned to this Court for reinstatement of the appeal.

*Turner v. State*, 422 S.W.3d 676, 696-97 (Tex. Crim. App. 2013) (footnotes omitted).

On May 30, 2014, the trial court held a hearing on the feasibility of a retrospective competency trial. [App. A,[1] RR-5/30/14 at 1, 4] At that hearing, for the first time, Turner presented the Court with *Greene v. State*, 264 S.W.3d 271, 272 (Tex. App.--San Antonio 2008, pet. ref'd), holding that a defendant must be presently competent to stand a retrospective competency trial. [App. A, RR-5/30/14 at 6] Although the trial court had "no doubt in my mind that he was competent," the trial court ordered Turner and the State to each provide an expert to evaluate Turner for his present competency "to make a full record for the Court of Criminal Appeals." [App. A, RR-5/30/14 at 16, 17]

---

[1] The appendices referenced herein are to those filed with Relator's petitions for writs of mandamus and prohibition and the supplemental appendix appended to this brief.

1

On July 1, 2014, the State filed a motion for reconsideration of the trial court's ruling to determine Turner's present competency, which was denied on July 2, 2014. [App. B]

On July 7, 2014, this Court filed the State's motion to enforce the Court's mandate, arguing that this Court's mandate did not contemplate present competency to be considered in determining whether a retrospective competency trial is feasible. This Court did not rule on the State's motion before it stored this case on January 29, 2015. The instant petition for mandamus supercedes the State's motion.

The trial court appointed Dr. Mary Alice Conroy, a psychologist on the recommendation of Turner. [App. C] The trial court also appointed Dr. Mark Moeller, a psychiatrist on the recommendation of the State. [App. C] Turner refused to see either doctor and neither doctor filed a report. [App. C]

On September 25, 2014, the trial court found that a retrospective competency trial is feasible and set this cause for trial on December 1, 2014. [App. D]

On November 24, 2014, the parties agreed to reset the retrospective competency trial to January 26, 2015. [App. E] On January 16, 2015, Turner re-urged his motion to determine present competency, which the trial court denied after reaffirming that a retrospective competency trial was feasible. [App. F, RR-1/16/15 at 1, 15-16]

Turner then filed a petition for writ of mandamus and writ of prohibition in this Court. The State filed a response in opposition, supporting the trial court's ruling, and

2

also arguing that the denial of a present competency determination could be considered by this Court when the appeal was reinstated. This Court denied leave to file without issuing a written order. *In re Albert James Turner*, WR-80,559-02 (Tex. Crim. App. Jan. 26, 2015).

On January 26, 2015, the trial court affirmed its decision that "it's feasible to have the retrospective competency hearing." [App. G, RR-1/26/15 at 1, 15-16]

On February 3, 2015, with a jury venire waiting, Respondent changed its order. [App. H, RR-2/3/15 at 17; App. I] In setting this case for trial on March 16, 2015, Respondent stated:

> Upon the finding of that jury on present competency, if they find Mr. Turner competent, then we will promptly move with finding another-- with impaneling another jury to determine the retrospective competency of Mr. Turner at the time of the trial because **if this present competency jury finds him competent, then it's--the finding of feasibility's made**. Then we'll go retrospective.

[App H at 17, emphasis added]

Respondent appointed Dr. Floyd Jennings and Dr. Connie Almeida to evaluate Turner for present competency. [App. I] Dr. Jennings's report is appended hereto as Appendix M. Although Turner was uncommunicative in an attempted evaluation, Dr. Jennings reviewed collateral material, including Turner's telephone calls to his family made while awaiting the retrospective competency trial, and found Turner "COMPETENT" to proceed. [App. M at 3, 6-7, 10]

3

On February 13, 2015, Respondent denied the State's motion for reconsideration. [App. J]

On February 13, 2015, the State filed its motion for leave to file and petitions for writs of mandamus and prohibition. On March 4, 2015, this Court stayed the jury trial on present competency and invited responses to the State's motion for leave to file. Turner responded on April 17, 2015.

This Court then filed this cause and requested briefing on designated issues. Respondent filed his brief on July 30, 2015.

**SUMMARY OF THE ARGUMENT**

A retrospective competency trial is not a criminal proceeding; the jury decides only whether the evidence proves by a preponderance of the evidence that the defendant was incompetent during the trial on his offense. A competency trial is not about the guilt-innocence, or sentencing, and this Court has held that it is a civil proceeding. A retrospective competency trial will place the defendant in a position comparable to the one he would have been placed during the trial on his offense. A retrospective competency trial is a civil proceeding.

There are three reasons why there is no inherent right to be competent for a retrospective competency trial.

First, there is no constitutional right to be competent for a retrospective

4

competency trial. A defendant in a civil proceeding has no Due Process or Confrontation Clause rights such as the right to be present or competent at trial. Further, even though competence to stand trial is partly defined by a person's present ability to consult with counsel, the right to be competent at trial does not derive from the right to the assistance of counsel. In a retrospective competency trial, the right to the reasonable assistance of counsel is unaffected by the present competence of the defendant because the trial looks backwards. The evidence is record based in nature; therefore, counsel can reasonably assist a defendant regardless of the defendant's competence.

Second, there is no statutory right to competency at a retrospective competency trial. Code of Criminal Procedure Chapter 46B provides procedures for determining whether a defendant is competent to stand trial on the offense irrespective of the defendant's current competency. For instance, counsel for the defendant decides whether to waive a jury trial, not the defendant.

Third, there is no rational reason to require a defendant to be presently competent for a retrospective competency trial. Evidence of a defendant's competency is derived from independent sources such as expert psychiatric testing and opinion, the observations of others, and audio and video recordings of the defendant at the time of the trial on the offense. A defendant's present recollection of his competency at the time of the trial on the offense either defeats the purpose of the

5

competency trial (he was competent), or is suspect (he was incompetent).  And the determination of present competency ultimately depends on the same evidence and ultimate issue to be determined by a jury on retrospective competency--did the defendant have the capacity to rationally understand the legal issues and options at the trial on the offense to consult with his lawyer?

The trial court's authority to determine feasibility derives from this Court's mandate.  Like that in *Watson v. State*, 606 S.W.2d 902 (Tex. Crim. App. 1980), the mandate in this case remands the case to the trial court to determine feasibility, not a jury.  The trial court does not have authority under the mandate to empanel a jury to decide feasibility.  Further, because a person has no inherent right to present competency for a retrospective competency trial, the trial court has no legal basis to empanel a jury to determine present competency.  Lastly, substantial evidence of Turner's competency at the time of his trial for capital murder exists and a retrospective competency trial is feasible regardless of Turner's present competency.

## ARGUMENT

**Issue One:** **Must a person be presently competent in order for a retrospective competency trial to occur?**

**State's Answer:** **No, a person need not be presently competent in order for a retrospective competency trial to occur.**

A. *There is no constitutional right to be competent for a retrospective competency trial.*

"We have repeatedly and consistently recognized that 'the criminal trial of an incompetent defendant violates due process.'" *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (quoting *Medina v. California*, 505 U.S. 437, 453 (1992); *Drope v. Missouri*, 420 U.S. 162, 171-172 (1975); *Pate v. Robinson*, 383 U.S. 375, 378 (1966)).

> "Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so. *Drope v. Missouri*, 420 U.S. 162, 171-172 (1975)." *Riggins v. Nevada*, 504 U.S. 127, 139-140 (1992) (opinion concurring in judgment).

*Cooper*, 517 U.S. at 354 (footnote omitted).

However, the "trial" referred to in *Cooper, Medina, Riggins, Drope, Pate*, and *Dusky v. United States,* 362 U.S. 402 (1960), is the trial on guilt-innocence of an offense, not a retrospective competency trial. *Cooper*, 517 U.S. at 350-51*; Medina*, 505 U.S. at 440-41; *Riggins*, 504 U.S. 132 ; *Pate*, 383 U.S. at 377; *Drope*, 420 U.S. at 162; *Dusky v. United States*, 271 F.2d 385, 386-87 (8th Cir. 1959).

7

The State has found no constitutional right to be competent for a retrospective competency trial.

> 1. *A defendant has no right to be competent to assist counsel at a retrospective competency trial.*

Turner and Respondent rely on *Greene v. State*, 264 S.W.3d 271, 273 (Tex. App.--San Antonio 2008, pet. ref'd), in arguing that a defendant must be competent to assist his counsel and testify at the retrospective competency trial. [App. A at 6; Respondent's Br at 3, 4]  However, the *Greene* Court mistakenly believed that Greene must be presently competent because "he should not be deprived of his right to assist counsel." 264 S.W.3d at 273.

Five years after *Greene*, the United States Supreme Court in *Ryan v. Gonzales*, 133 S.Ct. 696 (2013), held that the right to competence does not derive from the right to counsel. "Notwithstanding the connection between the right to competence at trial and the right to counsel at trial, we have never said that the right to competence *derives from* the right to counsel." *Ryan*, 133 S.Ct. at 703.

In *Ryan*, the Supreme Court considered whether a federal habeas statute provides a statutory right to competence in habeas proceedings to assist counsel in bringing habeas claims. *Id.* 702.  The Court reasoned, "Given the backward-looking, record-based nature of most federal habeas proceedings, counsel can generally provide effective representation to a habeas petitioner regardless of the petitioner's

8

competence." *Ryan*, 133 S.Ct. at 704.

Likewise, a retrospective competency trial is backward-looking, and the relevant evidence of the defendant's competency at trial on the offense is record-based in nature, i.e., fixed at the time of that trial. Counsel can generally provide effective representation at the retrospective trial regardless of the defendant's present competence.

> 2. *A defendant has no right to be competent under the Confrontation Clause for a retrospective competency trial.*

In *Ex parte Mines*, this Court considered whether a person who is sentenced to death has a right to be competent to assist counsel in filing an application for habeas relief. *Ex parte Mines*, 26 S.W.3d 910, 911 (Tex. Crim. App. 2000). This Court held a person does not have a right to be competent in habeas proceedings. *Id.* at 914-15. In specifically finding that in habeas proceedings a person has no right to be competent under the Confrontation Clause, this Court cited:

> *State v. Basile*, 942 S.W.2d 342 (Mo. 1997) (motion for post-conviction relief is civil proceeding and therefore there is no due process right to be present); *Leisure v. State*, 828 S.W.2d 872 (Mo. 1989) (for same reason there is no right under Confrontation Clause to be present).

*Ex parte Mines*, 26 S.W.3d at 914, n.26.

In *White v. State*, 591 S.W.2d 851 (Tex. Crim. App. 1979), *overruled on other grounds by Bigby v. State*, 892 S.W.2d 864 (Tex. Crim. App. 1994), this Court held that the nature of a competency hearing is "civil in nature." *Id.* at 854; *see also Baker*

9

*v. State*, 297 S.E.2d 9, 12 (Ga. 1982) (competency proceeding "is civil in nature").

Because a competency proceeding is civil in nature, "Rule 233 of the Texas Rules of Civil Procedure should control and that the defendant and the State should be permitted six peremptory challenges each." *White*, 591 S.W.2d at 854.

Likewise, because a retrospective competency trial is civil in nature, a person does not have the right to be competent under the Confrontation Clause. *See also State v. McRae,* 594 S.E.2d 71, 79 (N. C. Ct. App.), *pet. denied* 599 S.E.2d 911 (N.C. 2004) (holding that retrospective competency hearings do not implicate that right, quoting *State v. Davis*, 506 S.E.2d 455, 466 (N.C. 1988), *cert denied* 526 U.S. 1161 (1999) (competency hearings "[do] not implicate defendant's confrontation rights")).

> 3. *A retrospective competency trial is not about guilt or innocence, and a defendant has no right to the presumption of innocence under the Due Process Clause.*

"While a defendant may be under pending criminal charges, the issue of his guilt or innocence is not to be determined and punishment is not to be assessed at the competency hearing." *White*, 591 S.W.2d at 854.

This Court has noted that requiring a person to be competent at the trial on his offense "preserves the presumption of innocence by ensuring that a criminal defendant can help the defense attorney defend the client." *Ex parte Mines*, 26 S.W.3d at 914 (holding that a person in a habeas proceeding is no longer presumed innocent and has no right to be competent under the Due Process Clause). A defendant must be

10

competent "to communicate to counsel the facts necessary to mount an effective defense." *Id.* But, a retrospective competency trial is not about guilt or innocence or punishment, and competency is not a defense.

A retrospective competency trial does not have a substantial relation to a defendant's opportunity to defend and does not implicate a defendant's constitutional rights. *McRae,* 594 S.E.2d at 79.

A person has no right to be competent under the Due Process Clause.

> 4. *The State has found no reason to provide greater rights under the Texas Constitution.*

As shown below, there is no statutory or rational reason for a person to be presently competent for a retrospective competency trial. The State has not found any authority or reason to provide a person greater rights under the Texas Constitution to be competent at a retrospective competency trial.

> B. *There is no statutory right to be competent at a retrospective competency trial.*

The Code of Criminal Procedure provides for the determination of competency to stand trial in Chapter 46B and competency to be executed in Article 46.05, but the Code does not provide for a determination of competency to stand a retrospective competency jury trial.

A retrospective competency trial simply places a defendant "in a position comparable to the one he would have been placed in prior to the original trial."

11

*People v. Ary*, 246 P.3d 322, 330 (Calif. 2011) (quoting *Tate v. State*, 896 P.2d 1182, 1188 (Okla. Crim. App. 1995)); *see also, Brandon v. State*, 599 S.W.2d 567, 573 (Tex. Crim. App. 1979), *vacated on other grounds* 453 U.S. 902 (1981) (collecting cases in support of its holding, "There is, however, ample authority that the requirements of due process may be fully met as it concerns the appellant here if he were now granted a trial to determine, after the fact, whether he was competent at the time he was tried and convicted.").

Chapter 46B, Code of Criminal Procedure provides procedures for determining competency to stand trial. The sole issue to be decided by a jury at a competency trial is "whether the defendant is incompetent to stand trial?" Tex. Code Crim. Proc. art. 46B.052(a) (West 2009). Chapter 46B does not even contemplate a prerequisite that a defendant be presently competent for a competency jury trial.

In fact, Article 46B.005 authorizes counsel, not the defendant, to waive a jury trial on the issue of competency. Tex. Code Crim. Proc. art. 46B.005 (West 2009). If a defendant's competence is suspect, "it is impossible to say whether a defendant whose competence is in doubt has made a knowing and intelligent waiver of his right to a competency hearing." *Medina*, 505 U.S. at 450. If the defendant's competence is suspect, it follows that there is no right to be presently competent for a trial on the issue of his competence.

C.	*There is no rational reason to require present competency to stand a retrospective competency trial.*

1.	*Evidence of a defendant's competency is derived from independent sources.*

In *Medina v. California*, 505 U.S. 437 (1992), the Supreme Court recognized the contradiction in arguing that a defendant may be incompetent while presuming that he could intelligently waive his right to a determination of his capacity to stand trial. The Court explained:

> The rule announced in *Pate* was driven by our concern that it is impossible to say whether a defendant whose competence is in doubt has made a knowing and intelligent waiver of his right to a competency hearing. Once a competency hearing is held, however, the defendant is entitled to the assistance of counsel, *e.g., Estelle v. Smith*, 451 U.S. 454, 469–471 (1981), and psychiatric evidence is brought to bear on the question of the defendant's mental condition, *see, e.g.*, Cal. Penal Code Ann. §§ 1369(a), 1370 (West 1982 and Supp.1992); *see generally* Brakel, Parry, & Weiner, The Mentally Disabled and the Law, at 697–698. Although an impaired defendant might be limited in his ability to assist counsel in demonstrating incompetence, the defendant's inability to assist counsel can, in and of itself, constitute probative evidence of incompetence, and defense counsel will often have the best-informed view of the defendant's ability to participate in his defense. *E.g., United States v. David*, 511 F.2d 355, 360 (D.C. Cir. 1975); *United States ex rel. Roth v. Zelker*, 455 F.2d 1105, 1108 (2nd Cir.), *cert. denied*, 408 U.S. 927 (1972).

*Medina*, 505 U.S. at 540.

Thus, at a competency trial, the evidence of a defendant's competency is derived from sources other than the defendant--expert testimony, observations of others, and video and audio recordings made at the time of the trial on the offense--

13

evidence that can be adduced regardless of a defendant's present competency.

> 2. *A breakdown in the adversarial process occurs if a defendant's recollection of competency is credited.*

Respondent cites *People v. Lightsey*, 279 P.3d 1072 (Calif. 2012), in support of his authority to consider present competency. [Respondent's Br at 2]

The *Lightsey* Court remanded the case for a retrospective competency determination, if feasible, because the trial court erred in allowing Lightsey to represent himself during a competency proceeding. *Lightsey*, 279 P.3d at 1091. the *Lightsey* Court held that counsel should have been appointed because the Legislature intended "that a criminal defendant be represented by counsel at a competency hearing." *Lightsey*, 279 P.3d at 1092.[2]

In support of mandatory representation by counsel, the *Lightsey* Court observed that "if, as transpired in this case, a criminal defendant whose mental competence is in question is permitted self-representation and to maintain he or she is competent to stand trial, a breakdown occurs in the process of meaningful adversarial testing central to our system of justice." *Lightsey*, 279 P.3d at 1095. A competency trial is required when a defendant has apparently defective judgement. *Id.* "Whether the defendant believed he was competent to stand trial is irrelevant for, if a defendant is incompetent

---

[2]    The Texas Legislature intended the same in enacting Article 46B.006. Tex. Code Crim. Proc. art. 46B.006 (West 2009).

14

to stand trial, his belief that he is able to do so is without import." *Id.* (quoting *Bundy v. Dugger*, 816 F.2d 564, 566, n.2 (11th Cir. 1987)). "And if a defendant were to assert that he or she was incompetent, allowing such a defendant to attempt to prove his or her own incompetence would be nonsensical." *Lightsey*, 279 P.3d at 1096.

It is likewise nonsensical and a breakdown in the adversarial process to require a defendant to be presently competent for a retrospective competency trial in order to recall his belief about his competency at the time of his trial.

> 3.    *A present competency trial is duplicitous of the retrospective competency trial.*

Whether held at the time of the trial on the offense or retrospectively, the sole issue in a competency jury trial is, "[W]hether the defendant is incompetent to stand trial?" Tex. Code Crim. Proc. art. 46B.052(a).

Article 46B.003 provides:

(a)    A person is incompetent to stand trial if the person does not have:

    (1)    sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or

    (2)    a rational as well as factual understanding of the proceedings against the person.

(b)    A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence.

15

Tex. Code Crim. Proc. art. 46B.003 (West 2009[3]).

Chapter 46B does not explicitly define what it is that the defendant must have "a reasonable degree of rational understanding." But, when there is a "criminal proceeding," Article 46B.024 informs this phrase as:

(1)    the capacity of the defendant during criminal proceedings to:

  (A)   rationally understand the charges against the defendant and the potential consequences of the pending criminal proceedings;

  (B)   disclose to counsel pertinent facts, events, and states of mind;

  (C)   engage in a reasoned choice of legal strategies and options;

  (D)   understand the adversarial nature of criminal proceedings;

  (E)   exhibit appropriate courtroom behavior; and

  (F)   testify.

Tex. Code Crim. Proc. art. 46B.024(1) (West 2009).

However, a retrospective competency trial is not a "criminal proceeding"--there are no charges, no consequences (other than to become competent or to be civilly committed), and no legal strategies or options. Further, a defendant must prove his incompetency by a preponderance of the evidence, and thus a competency trial is not

---

[3]    Turner cut the throats of his wife and mother-in-law on or about December 27, 2009. *Turner v. State*, 422 S.W.3d 676, 678 (Tex. Crim. App. 2013).

16

"against" the defendant.

Assuming, arguendo, that a defendant must have "a reasonable degree of rational understanding" during a retrospective competency trial, what does he need to have a rational understanding about? If the answer is his incompetency during the capital murder trial, how would the defendant know whether he was incompetent or competent? *See Lightsey*, 279 P.3d at 1095-96.

Or perhaps, to be presently competent for a retrospective competency trial, a defendant must have a rational understanding that if he was incompetent at trial, he will have a new trial, but that a new trial cannot occur if he is again incompetent. In other words, the defendant must have a rational understanding that if he remains incompetent he may never be tried or punished. But, this would mean that competence could be used as a defense to prosecution, which it is not.

What issue about present competency must a jury decide?[4]

If as in *Turner*, a defendant is alleged by his attorneys to be incompetent because he will not cooperate with their strategy to get him a life sentence and competency boils down to whether the defendant's trial strategy is as lucid as the strategy of his attorneys, present competency might then be determined by whether the defendant has a rational understanding of his attorneys' defense versus his own.

---

[4] In evaluating Turner's current competency, Dr. Jennings employed the factors in Article 46B.024. [App. M at 6]

17

But, that is exactly what must be shown at a retrospective competency trial.

Further, if a defendant must be presently competent, counsel will insist that his client first waive the attorney-client privilege before the circumstances surrounding the choice of defense strategy can be shown and post-conviction proceedings will be stalled, a hostage to the defendant's competency.[5] A present competency trial is thus duplicitous of a retrospective competency trial and an exercise in futility.

No, a person does not need to be presently competent at a retrospective competency trial.

**Issue Two:** **If so, does the trial court have the authority to require a jury to determine the issue of present competency?**

**State's Answer:** **This issue is inapplicable because a defendant need not be competent for a retrospective competency trial.**

*A.* *Because a person need not be competent for a retrospective competency trial, the second issue is inapplicable.*

The State answered the first designated issue in the negative, therefore the second issue is inapplicable.

---

[5] Just as the trial attorney's file is hostage to Turner's competency in Turner's habeas case. *In re McCann*, 422 S.W.3d 701 (Tex. Crim. App. 2013).

18

B.   *A trial court's jurisdiction on remand is limited to the mandate of this Court, which required the trial court to determine feasibility of a retrospective competency trial.*

Further, on remand, a trial court has only limited jurisdiction to effect the mandate of this Court. *State v. Holloway*, 360 S.W.3d 480, 485 (Tex. Crim. App. 2012), *abrogated on other grounds Whitfield v. State*, 430 S.W.3d 405 (Tex. Crim. App. 2014). Like the mandate in *Ex parte Watson,* 660 S.W.2d 902, 906 (Tex. Crim. App. 1980), the mandate in this case ordered the trial court, not a jury, to determine the feasibility of a retrospective competency trial.

Professors Dix and Schmolesky twice state in explaining "Retrospective competency determinations," that the issue of feasibility is for the trial judge:

> If the appellate court found only that the evidence before the trial court raised the issue of competency, the remand is to be for, first, the trial judge to determine whether evidence that would support a finding of incompetency exists. If the trial judge determine this was the case, the judge was, second, to conduct a jury trial on competency.
>
> . . . .
>
> In some cases, the appellate court can determine for itself that a fair retrospective inquiry into competency can (or cannot) be held. However, this is sometimes not the case, apparently because the record does not make clear how difficult the issue is likely to be and the "quality and quantity" of evidence that would be available if the trial court were to conduct such a retrospective inquiry. In this event, the remand is for the trial court to first determine whether a retrospective determination of competency is possible and only upon an affirmative finding to conduct that inquiry into competency. When this is done, the question of the feasibility of a retrospective hearing is for the court rather than the jury.

19

George E. Dix & John M. Schmolesky, 43 *Texas Practice Series: Criminal Practice and Procedure* § 31:81, "Retrospective competency determinations" (3d ed. Westlaw 2014) (footnote citations in the second paragraph omitted).

In his brief, Respondent states, "This Court determined that a retrospective competency trial is feasible and ordered that a jury determine Mr. Turner's present competency before proceeding with the retrospective competency trial." [Respondent's Br at 1] However, the reporter's record shows that the trial court actually ceded the determination on feasibility to a jury, "if this present competency jury finds him competent, then it's--the finding of feasibility's made. Then we'll go to retrospective." [App. H at 17] Thus, a jury will decide whether a retrospective competency trial is feasible, contrary to this Court's mandate. The trial court has no authority to empanel a jury to determine present competency.

> C. *Respondent asserts he has authority under the Texas Constitution to empanel a jury to determine present competency, but no law requires present competency for a retrospective competency trial.*

Respondent asserts he has the right under the Texas Constitution to order a jury trial to determine the issue of present competency. [Respondent's Brief at 3-4] However, like granting a new trial "in the interest of justice," a trial judge's authority to act is not "unbounded or unfettered" and the act must be "in accordance with the law." *State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007). Here, as shown in answer to the first designated issue, a person has no constitutional or

statutory right to present competency for a retrospective competency trial and there is no rational reason to empanel a jury to determine present competency for a retrospective competency trial. The act of empaneling a jury to determine present competency is not in accordance with the law.

> D.    *Substantial evidence regarding competency, including audio-video recordings of jail visits during the course of the capital murder trial, are available, and a retrospective competency trial is feasible regardless of Turner's present competency.*

In determining whether a retrospective competency trial is feasible, the trial court should consider the following factors:

1.    The passage of time;

2.    The "quality and quantity" of evidence that would be available if the trial court were to conduct such a retrospective inquiry, including

> a.    the present recollection of expert witnesses who testified at the original hearing;

> b.    statements made by the defendant at trial,

> c.    the availability of contemporaneous medical and psychiatric evidence,

> d.    the availability of transcript or video record of the relevant proceedings,

> e.    the availability of witnesses, both expert and nonexpert, who could offer testimony regarding the defendant's mental status at the time of trial

3.    The ability of the judge and jury to observe the subject of their inquiry.

*See Brandon v. State*, 599 S.W.2d 567, 573 (Tex. Crim. App.1979),[6] *vacated and remanded on other grounds* 453 U.S. 902 (1981) (citing *Pate*); Dix and Schmolesky, 43 *Texas Practice Series* § 31:81; Francis C. Amendola, et. al., 22A C.J.S. Criminal Law § 791, Retrospective Hearings (March 2014). "No single factor is determinative, and the issue should be decided on a case-by-case basis." 22A C.J.S. § 791.

Here, the passage of time is not a significant factor. Trial counsel are the source of the opinion that Turner was incompetent to stand trial. Trial counsel, Pat McCann and Tyrone Moncriffe, are available to testify to their observations and interactions with Applicant.

Dr. Connie Almeida, who attempted to examine Turner during jury selection, is available to testify about her half hour encounter with Turner.

Turner took the stand, and the transcriptions of his testimony and the many interactions between Turner and the Court during the course of jury selection and the trial are available.

The records of the Fort Bend County Jail reflect Turner's physical and mental health during jury selection and the trial.

Most importantly, unlike *Pate*, during the course of voir dire and the end of the

---

[6] *See also* the cases collected by the court providing "ample authority that the requirements of due process may be fully met as it concerns the appellant here if he were not granted a trial to determine, after the fact, whether he was competent at the time he was tried and convicted." *Brandon*, 599 S.W.2d at 573.

trial, jail visits by Turner's family and a friend[7] were video recorded. The retrospective competency jury will be able to observe the affect and demeanor of Turner while interacting with persons he is comfortable with and trusts. In addition, the State has audio recordings of over thirty telephone calls by Turner made during the course of his capital murder trial.

The quality and quantity of evidence showing Turner's competence to stand trial is good, substantial, and readily available. Turner need not be presently competent for a retrospective competency trial.

---

[7] Willie Bradford, who testified at trial and was a co-worker of Turner's at the Jester IV unit.

## PRAYER

The Relator respectfully requests that this Honorable Court find that a defendant need not be presently competent for a retrospective competency trial and to issue a writ of mandamus and/or a writ of prohibition directing Respondent to withdraw its order for a jury trial on Turner's present competency, to determine the feasibility of a retrospective competency trial on factors other than Turner's present competency, to hold the retrospective competency trial if feasible, and to set a deadline for the return of this case to this Court.

Respectfully submitted,

/s/ John F. Healey, Jr.
John F. Healey, Jr.
SBOT # 09328300
District Attorney, 268th Judicial District
Fort Bend County, Texas

/s/ Fred M. Felcman
Fred M. Felcman
SBOT # 06881500
First Assistant District Attorney

/s/ Gail Kikawa McConnell
Gail Kikawa McConnell
SBOT # 11395400
Assistant District Attorney
301 Jackson Street, Room 101
Richmond, Texas 77469
(281) 341-4460 /(281) 238-3340 (fax)
Gail.McConnell@fortbendcountytx.gov

24

## CERTIFICATE OF COMPETENT EVIDENCE

I hereby certify that I have reviewed the foregoing petition and every factual statement is supported by competent evidence included in the appendix or record.

/s/ Fred M. Felcman
Fred M. Felcman

## CERTIFICATE OF COMPLIANCE

I hereby certify that the State's brief on the issues designated by this Court, in total through the prayer for relief contains 7,190 words as counted by WordPerfect 12, which is less than the 15,000 word limit for a brief.  Tex. R. App. 9.4(i)(2)(B).

/s/ Gail Kikawa McConnell
Gail Kikawa McConnell

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the State's brief on the issues designated served by electronic filing manager or by e-mail on August 10, 2015, on:

Hon. Brady G. Elliott, Respondent, <brady.elliott@fortbendcountytx.gov>

Robert Morrow, <Ramorrow15@gmail.com>, Attorney for Real Party in Interest

Lisa McMinn, State Prosecuting Attorney, <Lisa.McMinn@spa.state.tx.us>

/s/ Gail Kikawa McConnell
Gail Kikawa McConnell

25

# Appendix M

# Floyd L. Jennings, J.D., Ph.D.

19723 Arroyo Colorado Ct.

Cypress, TX 77433

Diplomate in Clinical Psychology, ABPP • Attorney at Law

(713) 551-9604 • fax (713) 481-0863 • fjenn40@gmail.com

March 8, 2015

## Competency Evaluation

The Honorable Brady G. Elliot
Judge, 268th District Court -- Fort Bend County    Harris County
Houston, Texas

|          |                                     |
|----------|-------------------------------------|
| Re:      | Turner, Albert James                |
| Cause #: | 10 DCR 054233                       |
| Charge:  | Murder - Post-conviction proceedings |

Dear Judge Elliot:

## Context of examination

On 3/5/2015 the above named person was examined by me for the purpose of determining competency, pursuant to your court order (Cause 10 DCR 054233#, dated 2/5/2015). The examination consisted of an attempted clinical interview of conducted cell side, because Mr. Turner refused to leave his cell for the purposes of this evaluation. In addition I reviewed numerous items, the sheer volume of which requires a listing in an appendix, attached to this report. I was accompanied by M. Connie Almeida, Ph.D., Director of Behavioral Health Services for Fort Bend County who facilitated access to the jail.

Qualifications of examiner and disclosures: See footnote. 1

---

1    Qualification of Examiner
    The examiner affirms that he meets the statutory qualifications to conduct such examinations as specified in Tex. Crim. Proc. §46B.022, inasmuch he is licensed as a psychologist in the State of Texas, (license no. 209650) has substantially more than twenty-four hours of training, and has completed the requisite eight hours of required continuing education in courses in forensic psychology in the 12 months preceding the appointment, and is board certified in clinical psychology by the American Board of Professional Psychology.

Disclosures and acknowledgments:
    The Rules of the Texas State Board of Examiners of Psychologists, 22 TAC §475.18 prescribe the disclosures that shall be made to the subjects of forensic evaluations, including (1) the nature of the anticipated procedures; (2) the specific purpose and scope of the evaluation; (3) the identity of the party who requested the psychologist's services; (4) the identity of the party responsible for payment; (5) the type of information sought and the uses for information gathered; (6) the recipients of the record; (7) the approximate length of time required to produce any report or written result; (3) any applicable limits on confidentiality; (9) whether the psychologist is or
Re: Turner, Albert J.
Competency Examination 3/5/2015                                          page#1

Examiner's understanding of legal principles underlying this evaluation

Issue: Competency standard.

A person is competent if he has both a rational as well as factual knowledge of the proceedings against him, and is able to assist his attorney with a reasonable degree of rational understanding. See Tex. Code Crim. Proc. art. 46B.003.

Issue: Presumption of competency and duty of examiner

A person is presumed competent unless or until proved incompetent by a preponderance of the evidence. Tex. Crim. Code art. 46B.003. Whereas a court requires anything more than a scintilla of evidence of incompetency to trigger an informal inquiry, and "must consider only that information tending to support incompetency, putting aside all competing indications of competency" (*Turner v. State*, 422 S.W.3d 676, HN9 (Tex. Crim. App. 2013), competency evaluations are different. Examiners must look both for evidence of competency and incompetency and weigh that evidence so as to be able to offer an intelligent, data-based, opinion to the court, addressing the statutory items in Tex. Code Crim. Proc. art.46B.024-.025. While the court will determine whether the evidence proffered on the issue of incompetency rises to the level of a preponderance, the examiner must provide such evidence as may exist on either side of the equation.

Issue: Uncommunicative defendants

Tex. Code of Crim. Proc. art. 46B.025 would prohibit offering an opinion based <u>solely</u> on

---

has been engaged to provide testimony based upon the report or written result requires that the subject of a forensic evaluation be informed about the purpose of the examination and that any information obtained during the course of the examination; and (10) the name of the psychologist examiner.

In the instant case, Mr. Turner was advised that the Court of Criminal Appeals had ordered the trial court to determine if it would be feasible to conduct a competency evaluation having to do with whether he had a rational and factual knowledge of the proceedings at the time of trial; and whether at that time, he was able to consult with his attorney with a reasonable degree of rational understanding. I said that the present evaluation, however, was preliminary in nature and was designed to ascertain if he understands the proceedings, which are occurring now, and whether at the present time, he has the ability to consult with his attorney with a reasonable degree of rational understanding. I further advised that the court had verbally expressed concern about his (then) fifteen day hunger strike and asked me to comment as to whether he is presently in jeopardy of harming himself. I stated that he did not have to talk with me and could choose to remain silent, or terminate the interview at any time. However, in the event that assent for the examination was not given, an opinion might nonetheless be offered to the court on the issue of competency. The defendant was further advised as to the statutory distribution of the report. Finally, I reminded him that although he is on death row, the present proceedings will take some years to wind their way through the courts and that in the interim, his physicians would take such measures to ensure that he remained healthy as might be required. (Later the same day an order was issued to bench warrant him back to TDCJ.)

The defendant was recumbent, lying on his bunk with a blanket over his head and made no acknowledgement to these disclosures. Nor did he assent to the examination for the purposes and subject to the conditions stated.

Re: Turner, Albert J.
Competency Examination 3/5/2015                                                    page#2

the grounds that the defendant was uncommunicative during the evaluation. However, the statute does not preclude offering an opinion on competency and, reasonably, an abundance of collateral information may be used to render such an opinion.

Issue: Purpose of the present evaluation.

Mr. Turner was convicted of capital murder on June 7, 2011; however, the Tex. Court of Criminal Appeals remanded the matter on October 30, 2013 for the purpose of a retrospective determination of competency at the time of the original trial. The court stated in its 2013 opinion2:

> "On remand, the trial court shall first determine whether it is presently feasible to conduct a retrospective competency trial, given the passage of time, availability of evidence, and any other pertinent considerations." Should the trial court deem a retrospective competency trial to be feasible, it shall proceed to conduct such a trial in accordance with Chapter 46B, Subchapter C, of the Code of Criminal Procedure."

The trial court has elected to follow *Green v. State*, 264 S.W.3d 271 (Tex. App. – San Antonio 2008) wherein the issue of a present-tense determination of competency was held as requisite to a conclusion of feasibility in conducting a retrospective determination of competency. The logic of this decision is akin to the requirement in Tex. Code Crim. Proc. art. 46B.025, that no opinion of sanity may be offered if the defendant is, at the time of the evaluation not competent. Noteworthy, however, is that competency examinations are slightly different: An insanity defense is an affirmative defense, such that the capacity of the defendant to recollect, accurately recall, and clearly communicate, his state of mind at the time is requisite. In competency evaluations, on the other hand, such as this evaluation of Mr. Turner, the person's willingness to communicate – his recollections of his state of mind at the time in question, his ability to accurately recall those recollections and clearly communicate to an examiner – concerning his state of mind at the time would definitely facilitate offering an opinion. In fact, the examiner might have a greater degree of certitude therein. But although present incompetency would make a retrospective determination far more difficult, it may yet be possible in the presence of an abundance of collateral information.

Nonetheless, as I understand it, the purpose of the present evaluation was to determine whether Mr. Turner has a rational and factual knowledge of the current post-disposition proceedings, and is now able to assist his attorney with a reasonable degree of rational understanding. In addition, the court verbally asked me to comment viz. the impact of the defendant's now fifteen day hunger strike.

Location of examination:

The defendant was seen cell side within the secure area of the Fort Bend County Jail in Richmond, TX; his having refused to voluntarily accompany officers to a private interview room allowing, face-to-face and barrier-free contact. Seen cell side, he was in no restraints; and was

---

2    *Turner v. State*, 422 S.W.3d 676 (Tex. Crim. App. 2013)
Re: Turner, Albert J.
Competency Examination 3/5/2015                                          page#3

lying on his bunk, covered with a blanket. He is housed on a medical unit, in a single cell, though with a shower in the cell. The nurse on the unit, Ms. J. Cooper asked if she could obtain vital signs, as are periodically done, before the evaluation, expressing concern that if he were in some fashion negative about the evaluation request he would refuse the medical appraisal as well. As a result, I had opportunity to stand out of sight of Mr. Turner so as to hear, albeit in muffled tones, his response to the nurse. He was polite, if not amiable, arose and permitted her to take his blood pressure and temperature. Sgt. Garza and two other deputies were present in or just outside the cell at this time. After vital signs were obtained, Sgt. Garza advised Mr. Turner that I was waiting to speak with him. A chair was obtained so that I could sit down at the doorway to his cell. I asked deputies to step back so as to permit some degree of privacy. At that time I made the disclosures described in Footnote #1. Mr. Turner made no sound and did not acknowledge my presence in any fashion. A few minutes later, Dr. Almeida returned to the cell, unaccompanied by me, at which point he briefly peeked out of the blanket but upon seeing her, again covered his face.

Background and demeanor of the defendant:

Mr. Turner is a now 50 year-old, black, male (dob: 1/11/65), he is 6'1" tall and now weighs 236 lbs. All questions appertaining to treatment of inmates on hunger strikes notwithstanding, in this case (a) a bench warrant was issued for return of Mr. Turner to the custody of TDCJ, which has protocols for management of persons who are fasting; and (b) Mr. Turner has continued to consume water during his fifteen days during which he has not consumed food provided by the jail; and (c) purchased some ten items from the commissary two days prior to refusing meals. That list of items included Honey Buns (5), creamy peanut butter (large jar), crunchy peanut butter (large jar), G'mas PD cookie (2), G'mas oat/raisin cookie (2), as well as Fritos and chili cheese Fritos, a day earlier. Consequently, the nurse advised that his lab values were only slightly high (red blood cells 5.93 (normal 4.4-5.80); hemoglobin 18.3 (normal 12.6-17.), and hematocrit 52.0 (normal 37.5-51.0). She further advised that the medical director for Correct Care who provides medical services to the Fort Bend County Jail is personally monitoring Mr. Turner's condition. In late 2011, Mr. Turner was depressed and also went on a hunger strike; however, after being transferred to Skyview, one of the three psychiatric units within TDCJ, he elected to begin eating rather than being force fed. I suspect he is not totally fasting now, and ultimately will begin eating when faced with the choice of being force fed, as in 2011; inasmuch as there are distinct voluntaristic elements in his behavior.

According to a TDCJ social history, dated 11/01/2011, Mr. Turner was born in Orlando, Fl eldest in a sibship of six, having two brothers and three sisters. He completed high school in 1987, and joined the US Army in 1988 serving a four enlistment. He received an honorable discharge in 1992, with a rank on discharge of E-4 (specialist). His M.O.S. was as a radio operator – which may explain his skill in modifying a small radio obtained in TDCJ so as to receive television channels (described in the affidavit of Gary Hunter). His DD-214 lists awards as including two Bronze Stars.

Mr. Turner reportedly fathered a child with Anastasia Lynn Sipp when he was in his early 20's. He may have had as many as four common law marriages, the first to a Vicki Rutland, the second to Wendi E. Turner in 8/92, the third to Lydia Y. Temple in 4/94, and the last to Keitha Frank in 7/96. The last three are described in documents related to beneficiary changes of Texas employees and two declarations of informal marriages were in the personnel files of TDCJ (Temple and Frank). The TDCJ social history notes that he has had 8 children. Note that there is trial testimony from Wendi turner and Lydia Temple about the defendant's propensity for violence prompted by his suspicion that both women were speaking to other men. In addition, there is trial testimony by Jennifer Muegge, a friend of the decedent, Keitha Frank, about the extent of Mr. Turner's suspicions and his violent behavior prior to the murders.

His employment with TDCJ included seven disciplinary cases, at least two of which involved investigations by Internal Affairs for excessive use of force; other issues have included misuse or abuse of sick time and frequent absences or tardiness. Although his performance evaluations have generally been positive, and some quite positive, a reading of his personnel records would certainly not suggest he was a model employee.

According to Mr. Turner, his medical history is positive for a report of hospitalization following an otherwise undescribed accident at age 23 resulting in hospitalization for loss of vision, and brief hospitalization at age 24, after a motor vehicle accident and head injury. He is diagnosed with hypertension and his TDCJ medical record indicates medication having been prescribed for hypertension.

Mr. Turner has never received a final diagnosis as exhibiting psychotic mentation, though his suspicions about his attorneys, reluctance to sign virtually all medically related forms in TDCJ, his expression that he "doesn't trust his lawyers and is willing to let the clock run out on his appeals process due to this fact.." were regarded as paranoid. (See TDCJ Medical Record of 11/01/2011, psychosocial evaluation by Robin Lucena, M.A., LPC) One TDCJ record states he was given an admitting diagnosis of major depressive disorder, single episode, severe with psychotic features. Though in the same record, it is said that the diagnosis was without psychotic features. It is clear, however, upon discharge from the Skyview medical unit, in February 2012, that the diagnosis was major depression, single episode, severe, without psychotic features. Moreover, he was never prescribed any antipsychotic agent. And, in fact, reports by TDCJ psychiatric staff of his conversations with them describe Turner as genial, humorous and denying any mental illness.

Nevertheless, taking into account all sources, the evidence tends to support that Mr. Turner has a long history of suspicious and paranoid thinking, despite his genial and warm conversations with immediate family and the lack of "spill-over" into other areas. This pattern tends to support that he has a paranoid personality structure. Moreover, trial transcripts describe behavior at the time of trial, coupled with affidavits of counsel, that suggest even more malignant and paranoid thinking in the context of the trial. It will be pointed out, however, that his outrageous behaviors are far the less at the moment and narrowly focused upon his lack of cooperation with counsel. Moreover, the present evaluation is focused upon his

Re: Turner, Albert J.
Competency Examination 3/5/2015                                    page#5

contemporaneous ability to meet the competency standard of Tex. Code Crim. Proc. art. 46B.003.

Factors in competency:

Texas Crim. Proc. §46B requires that examiners conducting a competency appraisal address each of the following enumerated items.

1. The capacity of the defendant during criminal proceedings to:
   a) rationally understand the charges and the potential consequences of the pending criminal prosecution,
   b) disclose to counsel pertinent facts, events and states of mind,
   c) engage in a reasoned choice of legal strategies and options,
   d) understand the adversarial nature of criminal proceedings,
   e) exhibit appropriate courtroom behavior and testify
2. As supported by current indications and the defendant's personal history, whether the defendant has a mental illness or is a person with mental retardation
3. Whether the identified condition has lasted or is expected to last continuously for at least one year; and
4. The degree of impairment resulting from the mental illness or mental retardation, if existent, and the specific impact on the defendant's capacity to engage with counsel in a reasonable and rational manner;.
5. If the defendant is taking psychoactive or other medications. Whether same is necessary to maintain competency and the effect of the medication on the defendant's appearance, demeanor or ability to participate in the proceedings.

And, if opined incompetent: (See *Tex. Code Crim. Proc. art. 46B.025)* then the examiner must address the following:

   b) If in the opinion of an expert appointed under Article 46B.021 the defendant is incompetent to proceed, the expert shall state in the report:
      (1) the symptoms, exact nature, severity, and expected duration of the deficits resulting from the defendant's mental illness or mental retardation, if any, and the impact of the identified condition on the factors listed in Article 46B.024;
      (2) an estimate of the period needed to restore the defendant's competency, including whether the defendant is likely to be restored to competency in the foreseeable future; and
      (3) prospective treatment options, if any, appropriate for the defendant.

Discussion:

In the instant case, the subject's refusal to communicate poses a hurdle in proffering any analysis of his present competency. However, an opinion may be offered on the basis of the aggregation of collateral information, only one part of which are Mr. Turner's own statements in

Re: Turner, Albert J.
Competency Examination 3/5/2015                                    page#6

telephone calls to family. (See Appendix for list of telephone calls reviewed, as well other sources of information).

It is evident from the repeated statements of Mr. Turner that he is well aware he is on death row, and that he has been convicted of capital murder. This issue is more relevant to a retrospective determination of competency than the task assigned in the present order. However, relevant to the immediate issue of post-disposition proceedings is his awareness of the potential consequences of the court's decision(s), ability to disclose to counsel pertinent facts, and engage in a reasoned choice of legal strategies and options.

The Court of Criminal Appeals has stated in its 2013 opinion, earlier cited, that:
*There is no reason to doubt that he understood that his life and liberty were at stake and what roles the various participants in the proceedings played. At issue is whether there was any substantive indication that he lacked either a rational understanding of the proceedings or a present sufficient ability to consult with counsel with a reasonable degree of rational understanding ....*

There is indication at present that Mr. Turner is well acquainted with the appellate process, and has a smattering of legal knowledge, as he provides instructions to his sister to construct motions of various sorts, and directs her to where they should be filed. He regularly comments about what he believes to be violations of due process and cites cases. Whether this knowledge, however, is irrational or merely badly mistaken is less clear. For example, he has repeatedly stated in telephone calls that if motions which have been prepared (by his sister) at his instructions reach the right court, "I will be in Orlando, Florida." (See telephone call from Fort Bend County Jail on 2/22/2015, at 1934 hours, see also 2/08/2015 at 1551 hours). It is evident that Mr. Turner shares a belief commonly shared by many in this country that the entire legal system is corrupt; that it is designed to punish black people (as he puts it) and kill them. As a result he will not cooperate with counsel, sees them as the enemy and will refuse to sign any document given him, with rare exceptions. He has also refused treatment at various points in TDCJ and Fort Bend County, but will refuse to sign the refusal form.

Put simply, the issue in Mr. Turner's obstructionism is whether it is the product of mental illness. In that regard, the problem posed by Mr. Turner's behaviour is that it is not singular or unique to Mr. Turner; for listening to the telephone calls with family, it is evident that family members share his mistrust of the legal system and support his notion of the inherent corruption therein. His beliefs are part of a larger social system, persons who think precisely as he; who support him; such that there is mutual reliance, which tends to confirm their shared worldview. Note that sovereign citizens behave similarly; and there are unknown numbers of Americans who go about their daily lives in ordinary fashion, yet believe that NATO and the Department of Homeland Security are in collusion to militarily take over the United States. Only a few sharing these beliefs have acted in bizarre manner such as barricading themselves in compounds to await the anticipated apocalypse. Sovereign

citizens who fail to cooperate are not uniformly regarded as incompetent in criminal proceedings. Mr. Turner is – at the present time – in an analagous circumstance.

Consequently, to say that his present thinking is solely the product of fixed paranoid delusions is pressing the limits of the present data. Defense Counsel may feel his behaviour is more paranoid now than at trial, and have eloquently described his behaviour at the time of trial, but I did not see nor hear such, or glean such from the plethora of materials examined. Rather, there is an abundance of contrary information.

Intelligence is not necessarily a distinguishing mark of competency, or that the person possesses both a rational and factual knowledge of proceedings, but efforts to organize the system to meet personal needs would constitute some evidence thereof. In this case, Mr. Turner worked for twelve years at a psychiatric facility within TDCJ – one of only three such units within that correctional system – i.e. Jester IV. He had daily exposure to persons, many of whom would adamantly maintain their innocence in the faith of overwhelming evidence to the contrary (as he), who would engage in often desperate acts to obtain a change in housing (the mental health units are air conditioned and have other benefits not available in TDCJ units generally). Sometimes, prisoners engage in self-mutilation or disclose bizarre ideas, and as I have examined many hundreds of persons in TDCJ, I have heard individuals calmly discuss their behaviors as merely the cost of obtaining better housing. Some are mentally ill and some are not. But, Mr. Turner is able to stir up much controversy with far more focused statements and acts of uncooperation.

Consider the following: It requires no speculation to simply describe Mr. Turner's present circumstance – he is housed in a single cell within medical services, has a private shower, has a number of persons check on him regularly and is visited by staff without necessity to be handcuffed and shackled. He has recently been thought to be on a hunger strike, and, indeed, not eating jail food, but has ordered numerous items from the commissary. Deputies and medical staff confirm that staff from the highest level in the sheriff's department have come to him, sat in his cell bringing a hamburger and French fries from a local fast food entity – and left the food overnight, after imploring him to eat, and even promising that his mother and sister would be flown across the country to see him were that the case. From a psychological point of view, such behaviour would virtually ensure that the person would continue his present behaviour! Mr. Turner's comments generally about his present circumstance are seen in his verbalization to a family member to the effect that "they have messed with my due process rights; I'll mess with them." (See telephone all of 11/03/2014 1915 hours). His refusals have an effect that establishes his sense of control over a situation where most would say he has no control whatsoever; not to say generating attention and concern at the highest judicial levels. The foregoing description is not the product of a disorganized and paranoid mind, but carefully designed to frustrate the legal system.

In addition, his behaviour and verbalizations both to family and staff are ordinarily quite cogent and genial. For example, a teasing relationship has emerged between a nurse

Re: Turner, Albert J.
Competency Examination 3/5/2015                                                        page#8

and Mr. Turner. He says of her that she is an "asshole" – and she responds with humor that "it takes one to know one" – to which he responds with laughter. There is an ease in these and other relationships such that the paranoid obstructionism common in his relationship to counsel is simply not present and that difference is more likely to be associated with voluntarism than would be seen in a person whose delusions drive many aspects of his behaviour. (Moreover, even if he were regarded as paranoid with narrow and fixed delusions, targeting such with any psychoactive medication would be nigh onto impossible.)

Conclusions:

In my opinion, Mr. Turner's recent obstructionist behavior has multiple elements, and is not solely the product of a mental illness, but is multiply determined. Each element described subsequently contributes to a greater or lesser degree to the debacle of his total lack of cooperation:

First, as noted earlier, he has a long history of suspiciousness, pathological jealousy and violence to any act perceived as betrayal. These character traits are circumscribed so that in much, if not most, of his life, he is quite normal, genial, and talkative.

Second, he is part of a larger social and cultural community who firmly believe that the criminal justice system is corrupt and racist in nature. As noted, he believes that both counsel and the courts are not working in his best interests. For that reason he sees no virtue in cooperation and obtains much gratification because he flummoxes his counsel. Oddly, and at the same time, he harbors many mistakes of fact concerning the law and yet hopes, if not believes, that if a motion prepared by his sister is able to be heard, the judge will be recused, evidence he believes was relevant will be acknowledged as having been excluded, and he will, therefore, be released. These beliefs – at the present time – however, are less obviously bizarre than many stated at the time of trial; and as such, would be shared by many thousands of Americans. Consequently, it is difficult to say that such are crystallized and fixed delusions, which are the product of a delusional disorder. In short, the predicate for a conclusion of incompetency is not immediately present.

Third, Mr. Turner has been successful in stirring up much controversy, creating a near maelstrom of disorder, a veritable flood of pleadings, and creating a certain amount of chaos that has drawn into it the medical staff of TDCJ as well as Fort Bend County Jail, jail management itself, the entire court system, his personal counsel – whom he has threatened – resulting in the withdrawal of one – leaving all the rest puzzled, and disarmed if not apoplectic. Were that not enough, he has vilified the court and accused all of conspiring to convict him. His success, however, contributes to the continuation of his behaviors and provides, as suggested, some sense of power in a circumstance wherein he is now powerless.

Is there evidence of incompetency? Yes. However, in my opinion it does not rise to the level of a preponderance so as to defeat the presumption of competency, as there is also

evidence of competency, which has been discussed.  In my opinion he has, at present, a sufficiently rational and factual knowledge of the proceedings against him, and is sufficiently able, should he desire so to do, to relate to counsel with a reasonable degree of rational understanding, such that he is to be understood as COMPETENT to proceed.  This opinion is, however, limited to the present moment and does not apply to his state of mind at the time of trial.

Should the court have further questions, please contact me.

Sincerely,

Floyd L. Jennings, J.D., Ph.D.
Clinical & Forensic Psychology

Cc:

Fred Felcman,
First Asst. District Attorney
Fort Bend County
Fred.Felcman@co.fortbendcounty.tx.gov

Robert Morrow
Attorney for A.J. Turner
Ramorrow15@gmail.com

Amy Martin
Attorney for A.J. Turner
amymartinlaw@gmail.com

Re:  Turner, Albert J.
Competency Examination 3/5/2015                                                                page#10

# Appendix
## Items reviewed in evaluation

1. *Turner v. State*, 422 S.W.3d 676 (Tex. Crim. App. 2013)
2. State's Response to the Petition for Writ of Mandamus and Prohibition, 1/23/2015, (including the following, as indented)
3.     State's Answer in Opposition to Turner's Motion to Address his Contemporary Competency
4.     Letter report of Dr. Mary Alice Conroy, psychologist, 8/29/2014
5.     Letter report of Dr. Mark Moeller, psychiatrist, 9/23/2014
6.     Affidavit of Gary Eles Hunter, appertaining to items in Mr. Turner's cell at the Polunsky Unit of TDCJ, and commissary records from TDCJ
7.     Affidavit of John Bohannon, appertaining to photographs of items in Mr. Turner's cell
8.     Affidavit of Christiana Pierce, mailroom supervisor at the Polunsky Unit of TDCJ and copies of numerous letters from Mr. Turner to family members
9.     Affidavit of Ben Simpson, Fort Bend County Jail, appertaining to Mr. Turner's having elected to meet registration requirements for telephone use
10. Report of David Axelrad, MD      6/18/2010
11. Report of Karen Gollaher, Ph.D.      6/01/2010
12. Report of Shawanda Williams-Anderson, Ph.D.      04/12/2011
13. Competency events time-line supplied by defense counsel
14. Transcript of hearing on Defense's Motion for Contested Competency   4/18/2011
15. Letter report of M. Connie Almeida, Ph.D.   5/19/2011
16. Transcript of Continuation of Defendant's Motion for Full Competency Examination, 5/20/2011
17. Defendant's Motion for New Trial,   7/06/2011
18. Affidavit of Patrick F. McCann      6/30/2011
19. Transcript of Ex Parte Ake Hearing   10/07/2011
20. Summary of TDCJ & Skyview Medical records   10/28/2011-2/06/12 (discharged from Skyview)
21. Summary of TDCJ Medical Records 6/17/12-1/06/2014
22. Medical Records chronology – 34 pages 6/7/11-4/10/14 (34 pages)
23. Probable cause affidavit by Det. Kevin Montfort
24. Indictment dated 4/5/2010
25. TDCJ employment records (1510 pages – selected)
26. Transcript of Mark Cunningham, PhD testimony 6/6/2011 Vol 62 pp31-108
27. Transcript of Ex Parte Hearing, viz. Brian Murray, Psy.D. 6/23/2010, 22 pages
28. Transcript of hearing viz. withdrawal of Ralph Gonzalez, 12/10/2010 13 pages
29. Transcript of Trial on the Merits, 5/27/2011 pp.34-80
30. Conversation with Sgt. Garza, FBSO and members of medical staff, Ms. J. Cooper.
31. Observation of Mr. Turner 3/5/2015
32. Conversation with Lesleigh Morton and Gail McConnell, 3/5/2015 – 1 hour
33. Telehonic conversation with Robert Morrow and Amy Martin, 3/7/2015 – 1 hour

Re: Turner, Albert J.
Competency Examination 3/5/2015          page#11